Clifford F. Hood and Mary T. Hood v. Commissioner.
Hood v. Commissioner
Docket No. 84613.
United States Tax Court
T.C. Memo 1961-231; 1961 Tax Ct. Memo LEXIS 118; 20 T.C.M. (CCH) 1140; T.C.M. (RIA) 61231; August 16, 1961
Jerome C. Bachrach, Esq., 2316 Farmers Bank Bldg., Pittsburgh, Pa., Sidney Hoffman, Esq., and Stephen M. Piga, Esq., for the petitioners. Gerald Backer, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax for 1956 to 1957 in the amounts of $63,510.77 and $87,261.40, respectively. The issues presented are (1) whether petitioner is entitled to interest deductions claimed in 1956 and 1957, (2) whether the difference between the purchase price and maturity price of certain Treasury notes constitutes long-term capital gain or the realization of interest income taxable as ordinary income. Alternative errors were alleged. Findings of Fact The stipulated facts are incorporated hereing by reference. Clifford F. Hood, *119 hereinafter referred to as petitioner, and his wife, Mary T. Hood, reside in Pittsburgh, Pennsylvania, and filed their returns for the years involved on a cash basis with the director of internal revenue at Pittsburgh. During the years at issue petitioner entered into the following transactions: First Transaction On March 29, 1956, petitioner purchased for $973,750 a total of $1,000,000 face value United States 2 7/8% Treasury notes Series A-1957, due March 15, 1957, originally issued September 15, 1953, at par. The bonds were purchased with the September 15, 1956 and March 15, 1957 interest coupons detached. On April 2, 1956, petitioner borrowed $1,000,000 from Mellon National Bank and Trust Company, Pittsburgh, Pennsylvania, at 4 1/2% interest, payable March 15, 1957. Petitioner executed a promissory note to the bank for the principal of such loan plus interest. On April 2, 1956, Mellon Bank, against delivery for petitioner's account paid $973,750 from the proceeds of the $1,000,000 loan to Chemical Corn Exchange Bank, New York City, for the purchase of $1,000, /8% Treasury notes. Mellon Bank remitted the $26,250 balance to petitioner. *120 Chemical Corn Exchange Bank delivered the Treasury notes to Mellon Bank's account with First National City Bank of New York as collateral for the promissory note executed by petitioner. Petitioner's liability was not limited to the collateral deposited. First National City Bank is one of Mellon's usual New York City correspondent banks. First National City Bank held the Treasury notes for Mellon Bank until their maturity on March 15, 1957. Petitioner issued a check for $43,375, dated April 2, 1956, to Mellon Bank in payment of all interest due under the $1,000,000 loan. On March 15, 1957, petitioner repaid Mellon Bank the $1,000,000 he had borrowed from it by directing that the redemption proceeds of his Treasury notes be applied to liquidate his loan. Second Transaction On August 1, 1956, petitioner purchased for $485,500, a total of $500,000 face value United States 2 3/4% Treasury notes Series D-1957, due August 1, 1957, with February 1, 1957 and August 1, 1957 interest coupons detached. These notes were originally issued July 16, 1956, at par. On August 1, 1956, petitioner borrowed $500,000 from Lake View Trust & Savings Bank, Chicago, Illinois, at 5 1/2% interest, payable *121 August 1, 1957. Petitioner executed a promissory note to the bank for the principal of such loan plus interest. On August 7, 1956, Lake View Bank, against delivery for petitioner's account paid $485,500 from the proceeds of the loan to Chemical Corn Exchange Bank, New York City, for the purchase of the $500, /4% Treasury notes. Lake View Bank remitted the $14,500 balance to petitioner. Chemical Corn Exchange Bank delivered the Treasury notes to Lake View Bank's account with First National City Bank of New York as collateral for the promissory note executed by petitioner. Petitioner's liability was not limited to the collateral deposited. First National City Bank is also Lake View's regular New York City correspondent bank. First National City Bank held the Treasury notes for Lake View Bank until maturity on August 1, 1957. Petitioner issued a check for $27,423.61, dated August 7, 1956, to Lake View Bank in payment of all interest due under the $500,000 loan. On August 1, 1957, petitioner repaid Lake View Bank the $500,000 he had borrowed from it by directing that the redemption proceeds of his Treasury notes be applied to liquidate his loan. *122 Third Transaction On January 23, 1957, petitioner purchased for $972,500, plus $8,508.83 interest accrued to date of purchase, a total of $1,000,000 face value United States 1 7/8% Treasury notes Series A-1959, due February 15, 1959, originally issued May 17, 1954, at par, with all interest coupons attached. On January 29, 1957, petitioner borrowed $1,000,000 from Philipp Brothers Ore Corporation, New York City, at 5 3/4% interest, payable February 15, 1959. Petitioner executed a promissory note to Philipp for the principal of such loan, plus interest. On January 29, 1957, Philipp, acting on behalf of petitioner paid $981,008.83 of the loan proceeds to petitioner's investment broker for the purchase of the $1,000, /8% Treasury notes and remitted the $18,991.17 balance to petitioner. The investment broker delivered the Treasury notes, through Chemical Corn Exchange Bank to Philipp's custody account at Chase Manhattan Bank as collateral for the promissory note executed by petitioner. Petitioner's liability was not limited to the collateral deposited. Chase Manhattan Bank held the Treasury notes (or equivalent Treasury notes) in custody for *123 Philipp until their maturity on February 15, 1959. Petitioner issued a check for $19,534.72, dated July 24, 1957, to Philipp as interest. Philipp retained the proceeds of the February 15, 1957 and August 15, 1957 interest coupons, each in the amount of $9,375. The aggregate amount of $18,750 was applied in payment of interest. On February 15, 1959, petitioner repaid Philipp the $1,000,000 he had borrowed from it by directing that the redemption proceeds of the Treasury notes be applied to liquidate the loan. Fourth Transaction On February 15, 1957, petitioner purchased for $971,562.50, plus $310.77 interest accrued to date of purchase, a total of $1,000,000 face value United States 1 7/8% Treasury notes Series A-1959, due February 15, 1959, originally issued May 17, 1954, at par, with all interest coupons attached. On February 21, 1957, petitioner borrowed $1,000,000 from Philipp Brothers Ore Corporation, New York City, at 5 3/4% interest, payable February 15, 1959. Petitioner executed a promissory note to Philipp for the principal of such loan, plus interest. On February 21, 1957, Philipp, acting on behalf of petitioner, paid $971,873.27 of the loan proceeds to petitioner's *124 investment broker for the purchase of the $1,000, /8% Treasury notes and remitted the $28,126.73 balance to petitioner. The investment broker delivered the Treasury notes to Philipp's custody account at Chemical Corn Exchange Bank as collateral for the promissory note executed by petitioner. Petitioner's liability was not limited to the collateral deposited. Chemical Corn Exchange Bank held the Treasury notes or equivalent Treasury notes in custody for Philipp until their maturity on February 15, 1959. Petitioner issued a check for $19,534.72, dated August 21, 1957, to Philipp as interest. Philipp retained the proceeds of the August 15, 1957 interest coupon in the amount of $9,375 which it applied in payment of interest. On February 15, 1959, petitioner repaid Philipp the $1,000,000 he had borrowed from it by directing that the redemption proceeds of the Treasury notes be applied to liquidate the loan. Petitioner in his return for 1956 claimed interest deductions in the amounts of $43,375 and $27,423.61 representing interest payments made respectively to the Mellon Bank and the Lake View Bank. The Commissioner disallowed these deductions. *125 Petitioner in his return for 1957 claimed an interest deduction of $67,194.44 representing interest payments made to Philipp. The Commissioner disallowed this deduction. In his 1957 return petitioner reported as long-term capital gains $14,500 which represented the difference between the purchase and maturity prices of the Treasury notes involved in the transaction with the Lake View Bank, and $26,250 which represented the difference between the purchase and maturity prices of the Treasury notes involved in the transaction with the Mellon Bank. The Commissioner determined that the $14,500 and $26,250 were taxable as ordinary income. Opinion The first issue relating to the claimed interest deductions is resolved in favor of petitioner on the authority of this Court's holding in . See also . The Commissioner raises an alternative issue by contending that if the interest deductions are allowed, the difference between the purchase price and the maturity price of the Treasury notes purchased with the coupons detached is ordinary income and not capital gain as reported by petitioner in *126 his return for 1957. The Commissioner argues that when viewed realistically the transaction was an assignment to the seller by petitioner of his right to future income in consideration for the seller's assigning him a right of redemption in the notes in the same amount. The Commissioner compares this case to those in which an indebtedness is issued at a discount or issued at par, but increases in value over a given period. We recognize that an artificial discount situation may be created when notes such as the Treasury notes in this case are sold with the coupons detached. Such a sale of obligations of indebtedness with unmatured coupons detached was envisioned by Congress in drafting the Internal Revenue Code of 1954 and a specific provision, section 1232(c) was included, which provided: (c) Bond With Excess Number of Coupons Detached. - If - (1) a bond or other evidence of indebtedness issued at any time with interest coupons is purchased after the date of enactment of this title, and (2) the purchaser does not receive all the coupons which first become payable more than 12 months after the date of the purchase, then the gain on the sale or other disposition of such evidence *127 of indebtedness by such purchaser shall be considered as gain from the sale or exchange of property which is not a capital asset to the extent that the market value (determined as of the time of the purchase) of the evidence of indebtedness with coupons attached exceeds the purchase price. If this subsection and subsection (a)(2)(A) apply with respect to gain realized on the retirement of any bond, then subsection 'a)(2)(A) shall apply with respect to that part of the gain to which this subsection does not apply. This provision was subsequently altered by the Technical Amendments Act of 1958, Pub L. 85-866 (Sept. 2, 1958) to read as follows: (c) Bond With Unmatured Coupons Detached. - If a bond or other evidence of indebtedness issued at any time with interest coupons - (1) is purchased after August 16, 1954, and before January 1, 1958, and the purchaser does not receive all the coupons which first become payable more than 12 months after the date of the purchase, or (2) is purchased after December 31, 1957, and the purchaser does not receive all the coupons which first become payable after the date of the purchase, then the gain on the sale or other disposition of such evidence *128 of indebtedness by such purchaser (or by a person whose basis is determined by reference to the basis in the hands of such purchaser) shall be considered as gain from the sale or exchange of property which is not a capital asset to the extent that the fair market value (determined as of the time of the purchase) of the evidence of indebtedness with coupons attached exceeds the purchase price. If this subsection and subsection (a)(2)(A) apply with respect to gain realized on the sale or exchange of any evidence of indebtedness, then subsection (a)(2)(A) shall apply with respect to that part of the gain to which this subsection does not apply. We think significant the Senate Finance Committee report accompanying this change which stated that: Section 55 - Bonds with coupons detached Where a bond is sold with a number of interest coupons detached, a discount is created. This discount gradually decreases as the due dates for the interest payments represented by the detached coupons pass, and as a result the value of the bond gradually increases until, other things being equal, it is restored to its prior value. Before the enactment of the 1954 Code, it was contended that when a bond *129 which had been purchased with coupons already detached was sold or redeemed, any gain realized on such a bond was to be treated as a capital gain. The gain in such a case, however, was at least partially attributable to the passing of the interest dates with respect to the detached interest coupons which, had they not been detached, would have resulted in ordinary interest income. Under the 1954 Code (sec. 1232(c)) where the detached coupons are payable on a date more than 12 months in the future, any gain, on sale or redemption, to the purchaser of the bond with the coupons detached is treated as ordinary income to the extent of the difference between the purchase price and the fair market value the bond would have had with the coupons attached at the time of the purchase. An exception was provided under the 1954 Code for interest coupons payable within 12 months from the date of purchase, in order to avoid the necessity of applying this provision in those cases where only 1 or 2 interest coupons had been detached. It was believed that such cases would not develop into tax-avoidance devines. However, since the adoption of the 1954 Code provision some taxpayers have been creating *130 artificial capital gains by buying bonds with detached interest coupons which are payable within 12 months from the date of purchase, and in this manner avoiding the application of the provision. * * *
S. Rep. No. 1983 to accompany H.R. 8381 (Pub. L. 85-866) 85th Cong. 2d Sess., p. 76 (1958). The Treasury notes in question were "purchased after August 16, 1954, and before January 1, 1958," and all the coupons detached became payable not more than 12 months after the date of the purchase. Accordingly, we hold for the petitioner on this issue also. Decision will be entered under Rule 50.